## A COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983

### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF LOUISIANA

David SARPY, on his own
behalf, Plantiff

_____

(Enter above the full name of
each plaintiff in this action.)

VERSUS

Daryl Vannoy, in his individual
and official Capacity as Warden of L.S.P. Defendant
William Rosso, in his individual
and official Capacity as asst. Warden, Defendan2.

(Enter above the full name of
each defendant in this action.)

494809

Inmate (DOC) number

**RECEIVED**

APR 2 9 2026

U.S. DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

DEPUTY CLERK

### Instructions for Filing Complaint by Prisoners
### Under the Civil Rights Act, 42 U.S.C. §1983.

This packet includes two copies of a complaint form and one copy of the pauper affidavit.

**IF YOU ARE A PARISH PRISONER**, you must file an original and one copy of your complaint for each defendant you name. For example, if you name two defendants, you must file the original and two copies of the complaint. You should also keep an additional copy of the complaint for your own records.

**IF YOU ARE A D.O.C. PRISONER**, you must file an original and one copy of your complaint. If the defendants are still employed by the Department of Corrections, only one service copy is needed. Otherwise, you must supply a copy of the complaint and the service address for <u>each</u> defendant no longer employed by the Department of Corrections.

<u>**All copies of the complaint must be identical to the original.**</u>

The names of <u>**all parties**</u> must be listed in the caption and in part III of the complaint <u>**exactly**</u>

the same.

In order for this complaint to be filed, it must be accompanied by the filing fee of $ 350.00. In addition, the United States Marshal will require you to pay the cost of serving the complaint on each of the defendants.

If you are unable to pay the filing fee and service costs for this action, you may petition the court to proceed in forma pauperis. For this purpose, a pauper affidavit is included in this packet. You must sign the affidavit, and obtain the signature of an authorized officer certifying the amount of money in your inmate account. If pauper status is granted, you will be required to pay an initial partial filing fee and thereafter, prison officials shall be ordered to forward monthly payments from your inmate account until the entire filing fee is paid.

You will note that you are required to give facts. THIS COMPLAINT SHOULD NOT CONTAIN LEGAL ARGUMENTS OR CITATIONS. ALSO, DO NOT INCLUDE EXHIBITS.

When you have completed these forms, mail the original and copies to the Clerk of the United States District Court for the Middle District of Louisiana, 777 Florida Street, Suite 139, Baton Rouge, La. 70801-1712.

I.    Previous Lawsuits

A.    Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment?    Yes ( ) No ( X )

B.    If your answer to A is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

1.  Parties to this previous lawsuit
    Plaintiff(s): _____

    _____

    Defendant(s): _____

    _____

2.  Court (if federal court, name the district; if state court, name the parish):
    _____

3.  Docket number: _____

2.

4.  Name of judge to whom case was assigned: _____

5.  Disposition (for example: Was the case dismissed?  Was it appealed?  Is it still pending?): _____

6.  Date of filing lawsuit: _____

7.  Date of disposition: _____

C.  Have you had any previously filed federal lawsuits or appeals, whether or not related to the issues raised in this complaint, dismissed by any federal court as frivolous, malicious, or for failure to state a claim for which relief can be granted?      Yes ( )    No ( X )

If your answer is yes, list the civil action numbers and the disposition of each case. You must identify in which federal district or appellate court the action was brought.

_____

II.  Place of present confinement: Louisiana State Pen. (L.S.P.)

A.  Is there a prisoner grievance procedure in this institution?  Yes (X) No ( )

B.  Did you present the facts relating to your complaint in the state prisoner grievance procedure?
    Yes (X) No ( )

C.  If your answer is YES:

1.  Identify the administrative grievance procedure number (s) in which the claims raised in this complaint were addressed. LSP - 2025 - 1637

2.  What steps did you take? I followed steps one and two filing Complaints to the prison warden then to the secretary.

3.  What was the result? Both Steps were denied.

_____

D.  If your answer is NO, explain why not: _____

3.

III.    Parties
(In Item A below, place your name in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.)

A. Name of plaintiff(s) David Sarpy #494809
   Address  L.S.P. 17544 Tunica Trace ANGOLA, LA 70712

In Item B below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use Item C for the names, positions, and places of employment of any additional defendants.

B.  Defendant DARYL VANNOY                                                    is employed as
WARDEN                                             at LOUISIANA STATE PEN.

C.  Additional Defendants: William Rosso is employed as ASST.
WARDEN@CAMP D. Louisiana state pen.


IV.    Statement of Claim

State here as briefly as possible the facts of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates, and places. **Do not given any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)     See extra sheets.

4.

V.    Relief

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes. Attach no exhibits. Compensatory Damages in an amount of $25,000,000 for the physical injuries, pain, suffering, and a emotional distress caused by defendants actions; Nominal damages for the violation of plantiffs Constitution rights; Punitive Damages against each defendant in his individual Capacity; Injunctive relief ordering defendants to: immediately cease exposing inmates at L.S.P. to toxic primer, Remediate the hazardous conditions, provide comprehensive medical evaluation, enforce proper safety training.

VI.    Plaintiff's Declaration

1. I understand that I am prohibited from bringing a civil action in forma pauperis if, while I was incarcerated or detained in any facility, I have brought three or more civil actions or appeals in a court of the United States that were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am in imminent danger of serious physical injury.

2. I understand that even if I am allowed to proceed in forma pauperis, I am responsible for paying the entire filing fee and any cost assessed by the Court, which, after payment of the partial filing fee, shall be deducted from my inmate account by my custodian in installment payments as prescribed by law.

3. I understand that if I am released or transferred, it is my responsibility to keep the Court informed of my whereabouts and failure to do so may result in this action being dismissed with prejudice.

Signed this   27   day of   APRIL   , 2026

David Sarpy #494809

Signature of plaintiff(s)

5.

## IV   Statement of Claim

The Plantiffs health and safety was and continues to be adversly effected, when he was forced into labor by asst. WARDEN William Rosso. Who had not been properly instructed or disregarded the instruction by Warden Darryl Vannoy.

At a meeting was held in the visiting area of Camp D at Louisiana State Pen. on 17-30-25 at approximately 0800 hrs on to 0900 hrs. Asst. Warden William Rosso ordered all dorm orderlies on Eagle unit at time to be present. Also numerous A-team security were present including: Colonel Jeffery Franklin, Lt. Col Edgar Sherman, MAJor Ms. Davis, Captain ms. Cummings, Captain ms. Bynum, LIeutenant ms. James (Rosso secretary) Lieutenant ms. veals and other A-TEAM SEcurity.

At this meeting I, and the other dorm orderlies were told and assured that will paint our respective dormitories. Refusal to do so will result in the offender being placed in administrative segregation; We were asked if we understood and do we have any questions. I personally told Asst. Warden Rosso I did not know how to paint, I also asked him if he would give us gloves and mask, He said

1.

yes but, WARden Rosso or any other security never provided anything. We were told to paint all locker boxes, WOODEN tables used for eating and recreation, the Bunk beds, the walls and doors.

I started painting, the fumes were intoxicating and I was dizzy and lightheaded soon after from inhaling these fumes. I tried to put a cloth over my face but it did not help. I Continued to paint because I didn't want to be locked up, a while later I asked Lt. MS. Clark if the doors Could be opened she refused but called her supervisor Colonel Jeffery Franklin who I personally spoke to asked if the doors Could be opened and that this paint is very strong and I need a mask and gloves. He said he'll see what he Can do. I did not receive anything. the door was opened an hour or so later for a little while then shut again.

I Continued painting without any p.p.e which was very difficult. These fumes linger in the air for hours including into the night. Forcing us to sleep inhaling these toxic fumes for more hours. This pattern Continued for the next four days.

2.

The fumes effected my breathing, still months later sometimes I get short winded.

The paint, everyday was all over my hands, arms, face, and clothes. The paint was very hard to get off and I had to scrub hard repeatedly even using mineral spirits to remove the paint from My Skin.

None of the days painting was I given P.P.E after asking repeatedly. I suffered from being dizzy and light headed, my eyes and throat were severly irritated, for weeks.

I filed a healthcare Complaint on 8-5-25 about these symtoms. I was seen but not given anything.

On the last day of painting on 8-3-25 I was cleaning up and Inspected the label and read it to be in shock afterwords, When I saw how extremely dangerous this paint is. I remove the label on this 5 gallon Bucket.

SHERWIN Williams INDustrial KEM KROMIK Universal Metal Primer Brown/Red

3.

<u>Danger</u>, Flammable liquid and vapor. May be fatal if swallowed or enters airways. Causes skin irritation. MAY Cause an allergic skin reaction. Causes Serious eye damage. May Cause respiratory irritation. May Cause Cancer. Suspected of damaging fertility or the unborn child. Causes damage to organs through prolonged or repeated exposure.

<u>Prevention</u>: Obtain special instructions before use. Do not handle until all safety precautions have been read and understood. Keep away from heat, hot Surfaces, sparks, openflames and other ignition Sources, No Smoking... Do not breath vapor... Use only out doors or in a wellventilated area... Wear protective gloves, protective clothing and eye or face protection, <u>Delayed effects from long term exposure</u>, Contains solvents which Can Cause permanent brain and nervous system damage. <u>For Industrial Use only</u>.

   I Was in Shock. Because, I Know for days I've been Inhaling and touching this toxic paint and having it on my skin for hours at a time. Not one, of the instructions for prevention were followed by Security or Wardens.

- I don't receive any special instructions before use.
- I was not aware nor informed of the safety precautions.

4.

- None of the wardens or security informed us about Not smoking or keeping this paint from ignition sources.
- I did not receive any mask or other device to prevent inhaling this vapor, which I did for 4 or more days Consecutively.
- We were forced to paint our living quarters which is inside and not enough ventilation.
- No protective gloves, protective clothing, and eye or face protection, was given to me, or any other offenders
- The label says for industrial use only, I was forced to paint the living quarters where I'm in Constant Contact with this toxin, the label states long term exposure is hazardous.
- I watched numerous offenders smoking around the painting while it was happening.

After Reading the label, I filed an A.R.P to try to get the prison to Remove or Cover this toxic Substance, which I touch repeatedly, daily, fearing for my health. I went through both steps to no avail.

A Couple of weeks later, some offenders came back repainting the tables and other surfaces. Again this paint effected me. I filed a medical Complaint because the vapors again had me experiencing the same syptoms.

5.

This time the nurse took my Complaint but the doctor never showed. I was not given anythin, or seen or rescheduled. I don't have the medical receipt becouse I didnt see the doctor. but, the Complaint is in the system.

After the A.R.P. was filed. Asst Warden Rosso Called me to his office and threatened to place me in administrave Segregation if I did not drop the A.R.P. MAjor Peter Lollis was present also and attempted to get me to drop the ARP. also. I refused to drop it. I was held for a little while then allowed to leave.

I Couldnt believe this Warden Rosso would threaten to lock me up for asserting my right to file a grievance. I asked Inmate Cousel Laurence Kelly was this legal, He told me, he Could ask me to drop it. I don't Know but this entire situation is very Stressful, especially, the fear of touching this paint. Which I have no Choice but to touch Since it is on my bed and boxes and tables in my living Quarters. I also, have times when my breathing gets short.

6.

David E
L.S.P.
Camp D Eagle-3
Angola, La
     70712

Clerk of the United
States District Court for
Middle District of Louisiana
777 Florida Street,
Suite 139,
Baton Rouge, La
     70801-1712